IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-00442-WYD-BNB

H&H TRANSFORMER, INC, a Colorado corporation,

    Plaintiff,

v.

BATTELLE ENERGY ALLIANCE, L.L.C., a Delaware limited liability company doing
business in Colorado,

    Defendant.

---

## ORDER ON MOTION TO DISMISS

---

THIS MATTER is before the Court on Defendant Battelle Energy Alliance, LLC's

["BEA"] Motion to Dismiss or to Transfer Venue, filed on March 20, 2009.  This motion

seeks dismissal of the case pursuant to Fed. R. Civ. P. 12(b)(3) based on a subcontract

at issue in the case which contains an explicit and mandatory forum selection clause

providing that any dispute pertaining to the subcontract be brought in the Federal

District Court for the District of Idaho in Pocatelle, Idaho (the Eastern Division).  BEA

asserts that this forum selection clause is enforceable and mandates that this case be

brought in Idaho.

Alternatively, it is argued that the case should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over BEA, a non-resident

entity who is not registered to do business in Colorado and whose primary business

operations are located in Idaho.  Additionally, it is argued that the subcontract

transaction from which Plaintiff's claims arise lacks sufficient connection to Colorado for proper application of Colorado's long-arm statute.

Finally, it is argued that even if the Court declines to dismiss the case, the case should be transferred pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) to the district in which it should have been filed – the District of Idaho.  Transfer is allegedly appropriate pursuant to 28 U.S.C. § 1406(a) based on the subcontract's mandatory forum selection clause.  Further, it is argued that the factors relevant to determining the most appropriate venue for a case strongly favor transfer to the District of Idaho pursuant to 28 U.S.C. §1404(a).

I find for the reasons stated below that this case should be dismissed because the case was filed in the wrong forum.  Specifically, I find that the forum selection clause is enforceable and that this case should have been filed in the United States District Court for the Eastern District of Idaho.  Based on this finding, I need not address the arguments that the Court lacks personal jurisdiction over BEA or that the case should be transferred to Idaho since Colorado is the wrong venue.

II.   FACTUAL BACKGROUND

Defendant BEA operates the Idaho National Laboratory ["INL"] for the U.S. Department of Energy.  (Declaration of Bonnie Hong ["Hong Decl."], ¶ 2, Ex. to Def. BEA's Mot. to Dismiss or to Transfer Venue ["Mot. to Dismiss"]; *see also* Compl., ¶ 18.). INL is an applied engineering national laboratory that supports the Department of Energy's missions in nuclear and energy research, science, and national defense. (Hong Decl., ¶ 2.)  Plaintiff H&H Transformer, Inc. ["H&H"] is in the business of purchasing, selling, brokering and servicing high voltage electrical apparatus wholesale.

-2-

(Declaration of Warren Hodapp ["Hodapp Decl."], ¶ 2, Exhibit A to Pl. H&H's Resp. to Def. BEA's Mot. to Dismiss ["H&H's Resp."]; Declaration of Wendy Hoit ["Hoit Decl."], ¶ 2, Ex. B to H&H's Resp.)

In early February 2008, an employee in the Colorado Springs office of Scientific Applications and Research Associates ["SARA"] requested a quote from H&H for the rapid procurement of a 25 megavolt ampere ["MVA"] substation transformer for a "sister company." (Hodapp Decl. at ¶ 4.) In response, H&H located a transformer in use in Michigan (the "Transformer") and on February 5, 2008 sent SARA a quote for $385,000, with terms "F.O.B. shipping Point" and "Sold: E-OK." (*Id.* at ¶ 4 and Attach. 1.) On February 8, 2008, Idaho-based Roberts & Folkers Associates, Ltd. ["Roberts"], contacted H&H regarding the offer H&H made to SARA, and H&H then emailed Roberts photographs of the Transformer in its current operational setting in Michigan. (*Id.* at ¶ 5 and Attach. 2.)

Roberts continued negotiations with H&H through at least March 26, 2008 on terms for the sale, transportation, approval tests, acceptance of the Transformer, and an alternate unit located in Canada. (*Id.* at ¶ 5.) On or about February 20, 2008, Roberts also requested H&H prepare a quote for an additional, 10 MVA, transformer. (Hoit Decl. at ¶ 5.)

On February 29, 2008, H&H alleges that BEA employee Aron Derbidge ["Derbidge"] joined the on-going negotiations between H&H and Roberts, and H&H emailed Derbidge a copy of the most recent 25 MVA transformer quote it prepared for Roberts, including a photograph of the faceplate for the Canada transformer with a

manufacture date of 1957.  (Hodapp Decl., ¶ 7 and Attach. 3.)[1]  H&H also attached the new quote for the 10 MVA transformer, addressed to Derbidge directly.  (*Id.*)

On March 3, 2008, Derbidge told H&H that BEA "want[ed] to go ahead with both [10 MVA and 25 MVA transformers] but cannot send a formal [purchase order] until approvals have been done on [his] end."  (*Id.* at ¶ 8 and Attach. 4.)  On March 6, 2008, Derbidge then e-mailed H&H stating "we have all the approvals on my end" and requesting that H&H "complete the attached forms and return them."  (Hoit Decl., ¶ 6 and Attach. 1.)  These forms were internal BEA documents, including PROC-2120a, "Supplier Representation/ Certifications…" which listed "F.O.B./Transportation Terms" as "Origin."  (*Id.*)  Later that day, Derbidge emailed H&H a different form, PROC-2120, titled "Proposal/Certification Form for RFP No. 00224563," and in a separate email he sent H&H a "Letter of Intent for Services" confirming the intent of BEA to contract with H&H for both 10 MVA and 25 MVA Transformer.  (*Id.* at ¶ 7 and Attach. 2.)

Between March 6 and through at least March 19, 2008, Derbidge and Roberts continued coordinated negotiations with H&H.  On March 7, 2008, Roberts inquired whether H&H could locate some potential transformers ["PTs"] and current transformers ["CTs"[ and later that day H&H sent Roberts a quote.  (Hoit Decl., ¶ 9.)  On March 11, 2008, Derbidge requested a formal quote for the same PTs and CTs.  (*Id.* at ¶ 10.)  On the same day, H&H asserts that it emailed Derbidge a photograph of the Transformer in use in Michigan, as well as images of the face place and wiring diagram.  (*Id.* at ¶ 11

---

[1]  H&H disputes BEA's contentions that Derbidge's "initial contact" with H&H occurred some time during March 6, 2008 when he e-mailed H&H and two other vendors a request for proposal for several electrical transmission components.

and Attach. 3.)  On March 13, 2008, H&H emailed both Roberts and Derbidge a combined quote for the PTs, CTs, 10 MVA, and the Transformer.  (*Id.* at ¶ 12 and Attach. 4; ¶ 13 and Attach. 5.)  The unit price listed for the Transformer was unchanged from the quote H&H provided SARA on February 5, 2008.

On March 19, 2008, Derbridge emailed H&H a four-page document, "INL FORM PROC-1811b" signed by BEA (the "Work Order"), that included in the statement of work a "25 MVA 3 PH Substation Transformer" at a unit price of $385,000.00, with Derbidge's request that H&H "review, sign and return the first page" and "submit an invoice for the initial payment on this order."  (*Id.* at ¶ 14 and Attach. 6.)  The document states that it incorporates by reference BEA's "General Provisions for Acquisition of Commercial Items/Services, Form PROC-202 Rev. June 1, 2006", but H&H states that this form was not provided to it.  (*Id.* at ¶ 14 and Attach. 6; *see also* Compl., ¶ 84.)  On March 20, 2008, H&H emailed a signed copy of the Work Order to BEA along with an invoice for $242,122.50, which BEA paid on March 22, 2008.  (Hoit Decl., ¶ 15 and Attach. 7; ¶ 16 and Attach. 8.)  PROC-1811b and PROC-202 are attached to the Motion as Exhibit A and referred to herein as the subcontract.

Shortly before March 19, 2008, H&H employee, Warren Hodapp ("Hodapp") departed from Colorado to Michigan to purchase and prepare the Transformer for delivery.  (Hodapp Decl., ¶ 11.)  While disassembling the Transformer in Michigan, Hodapp observed sufficient amounts of "dark oil" to request testing by the party selling the Transformer prior to purchase by H&H.  (*Id.* at ¶ 12.)  Hodapp forwarded copies of various test results to BEA staff requesting BEA "review and approve a.s.a.p." and informed Roberts and Derbidge that until the test results were approved by BEA, H&H

would not purchase and ship the Transformer to Idaho.  (*Id.* at ¶ 13; *see also* Compl., ¶¶ 97-116.)  Test results were then performed by H&H in Michigan.  ((Hong Decl., ¶ 5.)  On March 26, 2008, Hodapp received a fax from BEA with the handwritten notation "Approved by Brad Anderson OK to ship." (Hodapp Decl., ¶ 14 and Attach. 6.)  H&H then delivered the Transformer from Michigan directly to INL in Scoville, Idaho for installation.  (Hong Decl., ¶ 4; *see also* Subcontract, p. 3, §§ 6.2.2, 6.2.5.)

H&H again tested the Transporter in Idaho upon its delivery.  (Hong Decl., ¶ 5.) BEA asserts at that time that the Transformer did not function as it had during tests performed at the Transformer's origination site in Michigan.  (*Id.*, ¶ 8.)  Under the terms of the Subcontract, H&H retained the risk of loss during transit.  (Subcontract, p. 3, § 6.2.1.)  Upon final inspection, BEA rejected the Transformer as defective and withheld payment of the remaining purchase price.  (*See* Hong Decl., ¶ 10.)

The contract at issue has a mandatory forum selection clause providing that all disputes pertaining to the subcontract shall be litigated exclusively in the U.S. District Court for the District of Idaho, as follows:

> The parties agree that the appropriate forum for resolution of any dispute pertaining to this Subcontract shall be a court of competent jurisdiction as follows:
> (a) Subject to paragraph 13.1 b. of this Article, any such litigation shall be brought and prosecuted exclusively in Federal District Court; with venue in the United States District Court for the District of Idaho in Pocatello, Idaho.

(subcontract, Ex. A to Mot. to Dismiss, p. 13, § A 13.1; *see also* p. 2, § 4.1. Additionally, the contract specifies that Idaho law governs any substantive issue of law in dispute.  (*Id.*, p. 13, § A 13.2.).

II.   ANALYSIS

BEA first moves to dismiss the case under Rule 12(b)(3) based on the forum

selection clause.  A motion to dismiss based on a forum selection clause is analyzed as

a motion to dismiss for improper venue under Rule 12(b)(3).  *K&V Scientific Co., Inc. v.*

*Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002).  The

standard under 12(b)(3) is generally the same as a motion to dismiss for lack of

personal jurisdiction.  *See Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-

cv-02324-WYD-MEH, 2008 WL 2185882, at *5 (2008); *Johnson v. N. States Power Co.*,

No. CIV.A 99-2394-GTV, 2000 WL 16833658, at *2 (D. Kan. 2000).  The allegations in

the complaint must be accepted as true if they are uncontested by affidavits.  *See*

*Behagen v. Amateur Basketball Ass'n*, 744 F.3d 731, 733 (10th Cir. 1984).  "If the

parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's

favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary

presentation by the moving party."  *Id.*  The facts set forth in the previous section were

construed in this manner.

The forum selection clause in this case unequivocally states that any dispute

pertaining to the subcontract shall be brought and prosecuted exclusively in the Federal

District Court for the District of Idaho in Pocatelle, Idaho.  The first inquiry is whether the

forum selection clause is mandatory or permissive.  *K&V Scientific Co.*, 314 F.3d at 498

I find that it is a mandatory rather than permissive provision.  *See id.*; *Milk 'N' More, Inc.*

*v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) ("[t]he use of the word 'shall' generally

indicates a mandatory intent. . . ").

I further find that the two claims in this case are subject to the forum selection clause because each pertains to the subcontract.  The first claim is unambiguously captioned as a breach of contract claim, asserting that BEA "fail[ed] to pay H&H $242,122.50, as the balance owed under the terms of the contract." (Compl., ¶ 177; *see also* subcontract, p.1, § 1.1, providing that total price of the Transformer is $484,245, half of which is $242,122.50).  Thus, the claim pertains to the subcontract.

The second claim is for promissory estoppel, but the complaint makes clear that such claim is pleaded only in the alternative to its breach of contract theory.  ( Compl., ¶ 180.)  The promissory estoppel claim arises from the same transaction, the sale of the Transformer, and the sole allegation of a promise forming the basis of the claim is that BEA contractually promised to pay the remaining half of the contractual purchase price. (Compl., ¶ 181.)  Because H&H's promissory estoppel claim is pleaded as an alternative to, and involves the same operative facts as, the parallel breach of contract claim, it is also a claim that "pertains to the Subcontract" and it is therefore subject to the forum selection clause.  *See Xantrex Tech. Inc.*, 2008 WL 2185882, at *7 (alternate contractual theories not enough to avoid a forum selection clause if claims asserted arise out of the contractual relation and implicate the contract's terms) (*citing Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993) and *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 945 (3d Cir. 1988)); *see also ADT Security Servs., Inc. v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199, 1204 (D. Colo. 2006).

Such forum selection clauses are "'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the

circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972)).  A forum selection clause may be considered unreasonable if" "(1) the incorporation of the forum selection clause into the agreement was the product of fraud and overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Xantrex Tech., Inc.*, 2008 WL 2185882, at *10.  Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause." *Riley*, 969 F.2d at 958 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S. St. 1522, 1528 (1974)).

Here, H&H does not contend that the forum selection clause is unenforceable due to fraud or overreaching or that enforcement would be unreasonable or unjust. Indeed, H&H does not argue that any of the circumstances addressed above for invalidating a forum selection clause exist in this case.  Instead, H&H asserts that the subcontract containing the forum selection clause is illusory, meaning that the subcontract (and forum selection clause contained therein) cannot be enforced because it is not supported by legally sufficient consideration.  H&H argues that because a forum selection clause contained within an invalid contract is unenforceable, the Court need not consider the analysis argued by BEA which is premised on the validity of the underlying contract.

Turning to my analysis, the Tenth Circuit holds that where "a party 'has an unfettered choice of alternatives, and one alternative would not have been consideration if separately bargained for, the promise in the alternative is not consideration.'" *Heuser v. Kephart*, 215 F.3d 1186, 1191 (10th Cir. 2000) (quoting *Restatement (Second) of Contracts,* § 77, comment b.)  "[A]n apparent promise subject to the 'unfettered discretion' of a municipality's governing body to accept or reject is 'a classic example of an illusory promise.'" *Id.* (quoting *Mastaw v. Naiukow,* 306 N.W.2d 378, 380 (Mich. App. 1981) ("Since the Detroit Common Council had unfettered discretion to accept or reject the settlement, its options were in no way limited by the supposed settlement.").

*Heuser* cited New Mexico cases which had applied that principle, "holding that where the purported promise to perform actually leaves it to the discretion of the promisor, the alleged promise is illusory and not consideration as a matter of law." *Id.* at 1192 (citing cases).  It further stated, "'[a] valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration. It is also elementary that a contract, which leaves it entirely optional with one of the parties to perform, is not founded on mutual promises.'" *Id.* (citing *Bd. of Educ. v. James Hamilton Constr. Co.*, 891 P.2d 556, 561 (N.M. App.1994)).

From the foregoing, it appears that a contract is illusory when one party's promise is conditioned upon a future approval or authorization that cannot be assured at the time of the agreement.  *Id.* at 1191 (no consideration where municipality's attorneys merely promised to recommend city council approve settlement agreement).  As stated by another case which was cited with approval in *Heuser*, "[t]he fundamental element of

promise seems to be an expression of intention by the promisor that his future conduct shall be in accordance with his present expression, irrespective of what his will may be when the time for performance arrives." *Mastaw*, 306 N.W. 2d at 380 (quoting Corbin on Contracts, § 16); s*ee also James Hamilton Constr. Co.*, 891 P.2d at 561 (agreement unenforceable when one party's obligation depends upon his future unilateral decision); *Joseph E. Montoya and Assocs. v. State*, 704 P.2d 1100 (N.M. 1985) (no consideration to enforce a signed agreement with a state agency that was contingent upon a future review and approval of a different state agency).

In this case, H&H asserts that the contract gave BEA two types of unfettered discretion rendering the contract illusory and invalid.  First, while BEA requested that H&H deliver to INL a pre-owned Transformer, the contract as prepared by BEA required H&H to deliver the Transformer in new condition and makes no exception for its pre-owned condition.  H&H argues that no type of inspection or test could ever bring this pre-owned Transformer in compliance with that contractual obligation.  It further argues that this gave BEA unfettered discretion to either accept or reject the Transformer, with no legal consequence for either option.

Second, H&H asserts that BEA's acceptance of the Transformer was contingent upon a separate administrative decision – the authorization of the final payment.  It is argued that EA's decision to authorize the final payment is subject to BEA's future intent and discretion, and is not a binding promise to act upon the present intent of the parties at the time of execution.  It is further argued that under the contract BEA is free to withhold "authorization" of final payment for any reason or no reason.  BEA's

"acceptance" is unrelated to H&H's performance and could be denied on a completely arbitrary basis.   Until BEA authorizes final payment H&H has no recourse.

I find that the contract is not illusory and that the forum selection clause at issue is valid and enforceable.  First, I note that the contract was executed by both parties and significant steps were taken by the parties to perform under the contract.  In that regard, BEA paid H&H significant consideration of $242,122.50 as half payment for the Transformer pursuant to the subcontract, and the contract provided that the full purchase price of the Transformer was $484,245.00.  (Ex. A to Mot. to Dismiss at 3, ¶ 5 .1.  H&H then attempted to perform under the contract by delivering the Transformer.  Thus, I reject the argument that the contract was not supported by valid consideration.

As to the argument that BEA has unfettered discretion to pay or reject H&H's performance, I disagree.  The subcontract does state that "Final inspection of material, equipment or services under this contract will be performed at the INL. Acceptance under this Contract occurs at the time BEA authorizes final payment."  (*Id.* at 3, ¶ 6.3.  However, when the subcontract is read as a whole, I agree with BEA that it could reject the remainder of the payment due (or reject H&H's performance) only if the goods were nonconforming.  (*Id.* at 13, ¶ A.9, entitled "Inspection" and subsections thereof which allow the contractor the right either to reject or require correction of nonconforming supplies, meaning supplies that are defective in material or workmanship or are otherwise not in conformity with Order requirements).  I do not read the contract as allowing BEA discretion to avoid paying the purchase price even when conforming goods are delivered.

-12-

I also reject H&H's contention that BEA had unbounded discretion to reject the Transformer because it was pre-owned as compared to new. The subcontract qualified the new equipment requirement with "unless otherwise specifically approved by [BEA]." (Subcontract, p. 11, § 5.1.) There is no dispute that the Transformer was used; H&H even concedes that BEA specifically approved H&H's selection of the used Transformer before shipment. Further, BEA did not reject the Transformer because it was used, but because it did not function after delivery as it had prior to delivery.[2]

Based upon the foregoing, I find that the contract is not illusory and that the forum selection clause must be enforced. This case was brought in the wrong court and must be dismissed without prejudice. Since I find that dismissal is appropriate on this ground, I need not consider BEA's other arguments in its motion that the case should be dismissed for lack of personal jurisdiction or that the case should be transferred pursuant to 28 U.S.C. §§ 1404 or 1406. It is therefore

ORDERED that Defendant Battelle Energy Alliance, LLC's Motion to Dismiss or to Transfer Venue is **GRANTED** as to the Motion to Dismiss, and this case is

**DISMISSED WITHOUT PREJUDICE**.

---

[2] As to H&H's reference to not receiving a copy of certain terms and conditions of the subcontract (*see* Pls.' Resp. at 5), it does not pursue any argument based on this assertion. Indeed, H&H later recognizes that the terms and conditions were incorporated into the subcontract pursuant to § 4.1 (*see* Resp. at 10), and the copy of the subcontract attached to H&H's own invoice contains a handwritten reference to the "warranty clause" contained in such terms and conditions. (*Id.*, Ex. B, p. 32 of 40.) Further, courts have held that the failure to receive a copy of terms incorporated by reference does not permit avoidance. *Truckstop.net, LLC v. Sprint Communications Co.*, 537 F. Supp. 2d 1126, 1137 (D. Idaho 2008) (duty to "find out" or "hunt down" all referenced contract terms before signing); *Schwartz v. Comcast Corp.* 256 Fed. Appx. 515, 518-519 (3d. Cir. 2007) (contracting party bound by incorporated terms available at a specified internet website); *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 590 F. Supp. 2d 526, 531 (S.D.N.Y. 2008) (reference to internet address is sufficient even if terms not attached).

Dated:  October 23, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge